SAATCHI & SAATCHI BUSINESS
COMMUNICATIONS, INC.,
Plaintiff,

v.

JUST FOR FEET, INC., Defendant.

No. 99–CV–6083 CJS.

United States District Court,
W.D. New York.

June 11, 1999.

Russell Zuckerman, Underberg & Kessler, Rochester, NY, for plaintiff.

Eric J. Ward, Nixon Peabody LLP, Rochester, NY, for defendant.

## DECISION AND ORDER

SIRAGUSA, District Judge.

Now before the Court is the defendant's motion to dismiss or in the alternative, to stay [# 6]. For the reasons that follow, the defendant's motion to dismiss the action is granted.

## BACKGROUND

The plaintiff advertising agency is a New York corporation with its principal place of business in Rochester. The defendant is a Delaware corporation with its principal place of business in Birmingham, Alabama. The defendant operates a chain of approximately 330 stores which sell athletic footwear and apparel, at least ten of which stores are in the State of New York. On October 8, 1998, the parties entered into an agreement, whereby the defendant was to provide advertising services to the plaintiff. The agreement, which was apparently drafted by the plaintiff, states that it will be "interpreted in accordance with the law of the State of New York."

During the course of their business relationship, most if not all of the parties' face-to-face meetings were held in Alabama, although they also communicated between New York and Alabama by telephone and fax. The defendant authorized the plaintiff to prepare certain advertising, including three television commercials, one of which was to be aired during the third quarter of Superbowl XXXIII. However, the advertisement which aired during the Superbowl apparently became something of a public relations debacle for Just For Feet. The advertisement featured Caucasian hunters chasing an African man who is running barefoot. The hunters drug the African man, and while he is unconscious, they affix running shoes to his feet. When the runner awakens, he tries but is unable to remove the sneakers from his feet. In its complaint in the Alabama action, Just For Feet alleges, in relevant part, that "as a direct consequence of Saatchi's appallingly unacceptable and shockingly unpro-

fessional performance, Just For Feet's favorable reputation has come under attack, its business has suffered, and it has been subjected to the entirely unfounded and unintended public perception that it is a racist or racially insensitive company." (Defendant's Notice of Motion [# 6], Exhibit 1). In addition, the advertisement did not air during the third quarter of the football game as expected, which Just For Feet alleges was disastrous for its sweepstakes-type promotional entitled "Just For Feet's Third Quarter Super Bowl Win a Hummer Contest." While conceding that the advertisement was found to be offensive by some, Saatchi contends that the advertisement and sweepstakes were generally successful. Moreover, Saatchi contends that the advertisement was reviewed and approved by Just For Feet prior to its airing.

The plaintiff commenced this action in Federal Court on February 25, 1999, on the basis of diversity jurisdiction. The plaintiff's complaint alleges causes of action for breach of contract, and account stated, and seeks damages for work allegedly performed pursuant to the agreement, as well as for expenses allegedly incurred in purchasing television and newspaper advertising for the defendant.

On March 1, 1999, two business days after the plaintiff commenced this action, the defendant commenced another action in Alabama State Court, Jefferson County (Just For Feet, Inc. v. Saatchi & Saatchi Business Communications, Inc. and Fox Broadcasting Company, Civil Action No. CV-99-1183). In the Alabama action, Just For Feet asserts causes of action against Saatchi & Saatchi for breach of guaranty and warranty, misrepresentation, breach of contract and professional negligence. Just For Feet also asserts a cause of action against Fox Broadcasting for breach of contract. Fox, like Just For Feet, is a Delaware corporation. Just For Feet immediately served discovery notices on Saatchi & Saatchi. Saatchi then moved to dismiss the Alabama action, or in the alter-

native, to stay that action based upon the pendency of the action now before this Court. However, Judge Arthur J. Hanes, Jr., Circuit Judge of the Circuit Court for Jefferson County, Alabama, rendered an oral decision on April 6, 1999, and denied Saatchi's motion. Neither party has submitted a transcript of Judge Hanes' decision, however, Just For Feet's counsel, Christopher Willis, Esq., has submitted an affidavit in which he avers that Judge Hanes "determined that Just For Feet's claims have substantial ties with Alabama and that those tort claims are governed by Alabama law." After denying Saatchi's motion, Judge Hanes issued a scheduling order which, inter alia, states that the "[m]otion to Dismiss or Stay is provisionally overruled." (Defendant's Notice of Motion [# 6], Exhibit 2). Saatchi's counsel in the Alabama action asserts that Judge Hanes use of the term "provisionally overruled" was discussed at a conference on April 12, 1999, and that Judge Hanes used that term to indicate that his ruling was without prejudice, and that Saatchi could reapply for the same relief at a later time. (Prater Affidavit [# 14], p. 2). Judge Hane's scheduling order also sets a discovery deadline of October 15, 1999 and schedules a pretrial conference for September 3, 1999. Pursuant to Judge Hanes' scheduling order, the parties have commenced discovery in the Alabama action, and they have stipulated that all such discovery shall also be deemed discovery in this action. On May 7, 1999, Saatchi served its answer and counterclaim in the Alabama action, which counterclaim is essentially identical to Saatchi's complaint in this action. Issue has now been joined in the Alabama action, but not in this action.

On April 19, 1999, the defendant filed the subject motion to dismiss or in the alternative, to stay. The defendant moves to dismiss or stay this action pursuant to the "Colorado River Federal Abstention Doctrine." In the alternative, the defendant moves to dismiss this action pursuant to Fed.R.Civ.P. 19 for failure to join Fox, which it contends is an indispensable par-

ty. By a motion scheduling order dated May 3, 1999[# 10], the Court set a briefing schedule and scheduled oral argument for June 3, 1999. The plaintiff filed responsive papers on May 18, 1999, and the defendant filed reply papers on May 25, 1999. The Court has thoroughly reviewed these submissions and has considered the arguments of counsel.

## ANALYSIS

"Abstention doctrines permit a federal court to decline to exercise jurisdiction, even though the parties satisfy all jurisdictional requirements and the dispute is justiciable." 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE p. 122–1 (3d ed.1999). MOORE'S further states that

> abstention doctrines represent a kind of voluntary abdication of a court's rightful jurisdiction and are in tension with a right to federal court access that Congress has conferred through various jurisdictional statutes. The Supreme Court has suggested that federal courts have an "unflagging obligation" to exercise their validly conferred jurisdiction. Abstention doctrines, then, conflict with this general principle. However, the Supreme Court also has recognized that in some situations it may be highly appropriate or necessary for a federal court to yield its rightly conferred jurisdiction in deference to a parallel state court proceeding.

*Id.* at § 122.01[1]. Here, the defendants contend that this Court should abstain from exercising its jurisdiction over this action, based upon the Supreme Court's decision in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). That decision and its progeny have established six factors for a federal court to consider in determining whether or not to exercise its jurisdiction: 1) which court first assumed jurisdiction over the res involved in the actions; 2) the relative inconvenience of the federal forum; 3) the de-

sirability of avoiding piecemeal litigation; 4) the order of filing for the state and federal actions; 5) the law that provides the rule of decision; and 6) protection of the federal plaintiff's rights. *DeCisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989). No single factor is decisive. Rather, the Court must perform a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* Overall, the Court must find that "exceptional circumstances" exist to warrant abstention. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). If the Court finds that abstention is appropriate, it may either dismiss the action or stay it, pending the outcome of the parallel state court action. *DeCisneros*, 871 F.2d at 306; MOORE'S at § 122.07[2][b]. Ultimately, the decision whether or not to abstain lies within the sound discretion of the Court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *DeCisneros*, 871 F.2d at 307.

 The Court will now examine the six factors enumerated above.

### 1. Exercise of Jurisdiction over a res.

In this action, neither court has assumed jurisdiction over a res. Accordingly, this factor weighs against abstention. *DeCisneros*, 871 F.2d at 307.

### 2. Relative inconvenience of the federal forum.

 This factor is analyzed by considering the following: 1) the place where the operative events occurred; 2) the convenience of the parties; 3) the convenience of the witnesses; 4) the availability of process to compel the attendance of unwilling witnesses; 5) the cost of obtaining witnesses' presence; 6) the familiarity with governing law; 7) trial efficiency; and 8) the interest of justice. *AMNEX, Inc. v. Rowland*, 25 F.Supp.2d 238, 244 (S.D.N.Y.1998). Applying these considerations, the defendants contend that most of the operative events took place in Alabama. Specifically, they contend that all of the face-to-face meetings between representatives of the parties took place in Alabama. Moreover, the defendants contend that their tort claims arise under Alabama law, and that Alabama has a legitimate state interest because the action "affects the reputation and perception of a publicly held corporation headquartered in Alabama." (Defendant's Memorandum of Law [# 7], p. 7). The plaintiff concedes that certain meetings took place in Alabama, but it disputes that most of the operative events took place in Alabama. For example, the plaintiff notes that Saatchi performed all of its work in New York, that it purchased its advertising time from Fox in New York, and that the television commercial was filmed in California and edited in Toronto. Moreover, the plaintiff contends that the parties had many telephone conferences between New York and Alabama. The plaintiff also contends that this Court would be more familiar with the governing law of this action, since the contract is to be interpreted under New York law. The plaintiff also contends that most of the non-party witnesses are located in New York. Finally, the plaintiff contends that the interests of justice favor its chosen forum, because the defendant's claims are "trumped up." The Court finds that neither New York nor Alabama would be an appreciably more convenient forum. In either case, one side is going to have to travel, and it appears that both the party and non-party witnesses are evenly distributed between New York and Alabama. As for familiarity with a particular state's law, the Court notes that Judge Hanes has apparently ruled that Alabama law will apply to the defendant's tort claims, while it appears that New York law may apply to issues of contract interpretation. Thus, it appears that either court may have to apply a different state's law. Finally, the Court finds that the interests of justice do not favor either side in this analysis. Accordingly, since neither forum is clearly more convenient, this factor weighs against abstention. *DeCisneros*, 871 F.2d at 307.

### 3. Desirability of avoiding piecemeal litigation

This factor is considered one of the most important in deciding whether or not to abstain. *AMNEX,* 25 F.Supp.2d at 245. Here, the Court finds that the as between Saatchi and Just For Feet, both actions are essentially identical. Saatchi's counterclaim in the Alabama action is identical to its complaint in this action, and Just For Feet's answer in this action would undoubtedly contain counterclaims that mirror its complaint in the Alabama action. Accordingly, neither action is more comprehensive in that respect. However, the Alabama action is more comprehensive in that Fox is already a party to that action, and issue has been joined as to all parties in that action. As a result, Just For Feet can pursue all of its claims in the Alabama action, while at present it cannot in this action. Regardless of whether or not, as a jurisdictional matter, Fox can be made a party to this action, the fact remains that Fox already is a party in the Alabama action. Accordingly, the Court finds that the Alabama action is currently more comprehensive. Moreover, even if Fox were joined in this action, given Judge Hane's ruling, there would still be two essentially identical actions pending simultaneously. The Court finds that the goal of avoiding "duplicative simultaneous litigation" weighs in favor of abstention. *DeCisneros,* 871 F.2d at 308.

### 4. Order of filing for the state and federal actions

As to this factor, the Court must examine not only the chronological order of filing, but also the relative progress that has been made in the two proceedings. *DeCisneros,* 871 F.2d at 308. Here, the federal action was commenced two business days before the state-court action. Therefore, they were essentially commenced at the same time. However, the Alabama action is more advanced at this stage, because issue has been joined, Judge Hanes has already made a provisional ruling on a similar motion to stay or to dismiss, and he has conducted a preliminary conference and issued a scheduling order. Moreover, discovery demands have already been served in the Alabama action. Accordingly, the Court finds that this fourth factor weighs in favor of abstention.

### 5. Law that provides the rule of decision

All of the claims in both actions are state claims. The parties' agreement states that it will be interpreted according to New York law, however, the defendant's tort claims in the Alabama action arise under Alabama state law. Moreover, it is conceded that Just For Feet's claim of professional negligence against an advertising agency is a novel theory. (Plaintiff's Memorandum of Law [# 12], p. 1) (Referring to the defendant's "novel advertising malpractice claim.") The Second Circuit has held that "if federal law is not implicated, and the governing state law involves a novel state law theory, a stronger argument may be made for abstention." *DeCisneros,* 871 F.2d at 309 (Internal quotation marks omitted). Accordingly, the Court finds that this fifth factor favors abstention.

### 6. Protection of the federal plaintiff's rights.

Evidence that a federal plaintiff's rights may not be protected in state court weighs heavily in favor of exercising federal jurisdiction. *DeCisneros,* 871 F.2d at 309. Here, the plaintiff argues that the contract provides that it will be interpreted according to New York law, and that this Court "is more familiar with New York law" than the Alabama court. (Plaintiff's Memorandum of Law [# 12], p. 14). However, the plaintiff has not really demonstrated that its rights will be unprotected in the Alabama action. Moreover, the Court notes that while the agreement, drafted by the plaintiff, does provide that the contract will be interpreted according to New York law, it does not contain a forum selection clause. Accordingly, since the plaintiff has not demonstrated any danger to its rights, "this factor does not weigh in favor of or

against abstention." *DeCisneros,* 871 F.2d at 309.

## CONCLUSION

The Court finds that after weighing all of the foregoing factors, abstention in this case is appropriate. Most notably, the Alabama action appears to be more comprehensive and more advanced, and the defendant's professional malpractice claim is a novel claim that would be more appropriately considered in an Alabama state court. Moreover, since Judge Hanes has already ruled, albeit "provisionally," that the Alabama case may proceed, this action would be duplicative. Therefore, the defendant's motion to dismiss the action (# 6) is granted.

IT IS SO ORDERED.